IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| K.W.P., *by his parent and next friend* TOMESHA PRIMM, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 16-974 |
| KANSAS CITY PUBLIC SCHOOLS, | ) COMPLAINT FOR DAMAGES AND<br>) DECLARATORY AND INJUNCTIVE |
| BRANDON CRADDOCK,<br>in his individual capacity, | ) RELIEF<br>)<br>) **JURY TRIAL DEMANDED** |
| and | )<br>) |
| ANNE WALLACE,<br>in her individual capacity, | )<br>)<br>) |
| Defendants. | ) |

## COMPLAINT

Plaintiff K.W.P. alleges as follows:

## INTRODUCTION

1.  This is an action for damages, declaratory judgment, and injunctive relief to remedy Defendants' violations of Plaintiff K.W.P's rights under the United States Constitution.

2.  Plaintiff is an elementary schoolchild. At the time of the incident giving rise to this complaint, Plaintiff was seven years old. Plaintiff was unlawfully restrained and handcuffed at a public elementary school with excessive force and without necessity by Defendant Brandon Craddock, a School Resource Officer.

3.  At the time he was unlawfully restrained by Defendant Craddock, Plaintiff weighed less than fifty pounds and stood less than four feet tall. He had committed no crime, had

1

threatened no one, and posed no imminent danger to anyone that necessitated Defendant Craddock to restrain plaintiff in handcuffs.

4. As a result of being subjected to unnecessary and excessive handcuffing, Plaintiff experienced fear, pain, and emotional trauma, and was withdrawn from school.

5. In 2009, the U.S. Government Accountability Office (GAO) published a nationwide study documenting hundreds of alleged incidents of restraint and seclusion in schools from 1990 to 2009.

6. Following that study and its presentment before a House of Representatives committee, the U.S. Secretary of Education wrote a letter to all states requesting that they review and revise their policies regarding restraint and seclusion of students. In response, Missouri enacted a state statute to address the concerns of the GAO and the DOE. *See* Mo. Rev. Stat. § 160.263. That statute requires each school district to "adopt a written policy that comprehensively addresses the use of restrictive behavioral interventions" and requires a district's seclusion-and-restraint policy "be consistent with professionally accepted practices and standards of student discipline, behavior management, health and safety." Mo. Rev. Stat. § 160.263.

7. Mo. Rev. Stat. § 160.263 also requires the Department of Elementary and Secondary Education to adopt a model policy, which it did. The restraint of Plaintiff under the circumstances here is radically inconsistent with the model policy, which states that "seclusion, isolation and restraint are used only in response to emergency or crisis situations and should: (a) not be viewed as a behavior change or intervention strategy, (b) be implemented only under extreme situations and as a matter of last resort, [and] (c) be implemented only by trained personnel." Defendants violated all three of these principles.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, to hear Plaintiff's claims under 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) & (2) because Defendant Kansas City Public Schools is located in Jackson County, Missouri, and the incident giving rise to the claim in this suit occurred in Jackson County.

10. Venue is proper in the Western Division pursuant to Local Rule 3.1(a)(1)(a).

## PARTIES

11. At all times relevant, Plaintiff was a second-grade student enrolled in George Melcher Elementary School within the Kansas City Public Schools system. As a minor child, Plaintiff brings this action through his mother and next friend Tomesha Primm. Plaintiff and his mother reside in Jackson County, Missouri.

12. Defendant Kansas City Public Schools (KCPS) is a school district and political subdivision of Missouri.

13. Defendant Brandon Craddock was assigned to George Melcher Elementary School as a School Resource Officer and employee of KCPS. Defendant Craddock is a "person" for purposes of 42 U.S.C. § 1983. At all times relevant, Defendant Craddock was acting under color of state law. He is sued in his individual and official capacities.

14. Defendant Anne Wallace was the principal of George Melcher Elementary School and an employee of KCPS. Defendant Wallace is the policymaker for the elementary school and a "person" for purposes of 42 U.S.C. § 1983. At all times relevant, Defendant Wallace was acting under color of state law. She is sued in her individual and official capacities.

## STATEMENT OF FACTS

15. At the time of the incident giving rise to this complaint, Plaintiff was seven years old and was finishing his second-grade year at George Melcher Elementary School in Kansas City, Missouri, which is part of the KCPS system.

16. Plaintiff has a hearing impairment in one ear and was bullied and taunted by classmates from time to time.

17. On April 30, 2014, after Plaintiff was asked to move seats to sit near another student who had teased him in the past, that student teased Plaintiff aggressively.

18. Plaintiff remained at his desk and began crying and hollering.

19. At that time, his classroom teacher called Plaintiff's parent by telephone.

20. At the same time, KCPS School Resource Officer Brandon Craddock walked by the classroom door, stuck his head through the doorway, and instructed Plaintiff to come with him. Defendant Craddock had not been called by the teacher to assist.

21. Plaintiff stopped crying and hollering but remained at his desk.

22. After Defendant Craddock made a second request, Plaintiff complied, getting up out of his desk and joining Defendant Craddock outside the classroom in the hallway.

23. According to Defendant Craddock's report completed after the incident, he had been on his way to an adjacent classroom, where he wished to get a statement from a teacher about an unrelated incident.

24. According to the report, Defendant Craddock tried to resume that errand with Plaintiff accompanying him, but Plaintiff, who was now frightened and crying, tried to walk away.

4

25. According to the report, Defendant Craddock warned Plaintiff several times to calm down and stop walking away.

26. What Defendant Craddock euphemistically calls "warnings" in his report were statements like "what are you hollering about" and "stop that crying."

27. According to the report, Plaintiff tried to push past Defendant Craddock, so he then "grabbed [Plaintiff's] left wrist since he refused to follow [Defendant Craddock's] directions."

28. Plaintiff, who was seven years old at the time and weighed less than fifty pounds, was upset and frightened. Defendant Craddock hurt him by grabbing his wrist.

29. According to the report, Plaintiff "began to cry even harder" and continued to try to pull away from Defendant Craddock.

30. According to the report, Defendant Craddock maintained firm control of Plaintiff's wrist and told Plaintiff they were going to the front office.

31. Defendant Craddock did not stop, squat down to the level of Plaintiff, or try to speak to Plaintiff in a calm manner.

32. Defendant Craddock told Plaintiff repeatedly to "shut up with the crying" and made other similar remarks while he forcibly pushed and pulled Plaintiff down the hallway of the school.

33. According to Defendant Craddock's report, as he was dragging Plaintiff by the wrist, Plaintiff reached out and held on to a passing handrail and/or flailed his free arm.

34. Instead of stopping or employing any de-escalation techniques, Defendant Craddock twisted Plaintiff's arms and handcuffed Plaintiff with his arms behind his back, and then led him to the front office in handcuffs.

5

35. According to Defendant Craddock's report, Craddock told Defendant Anne Wallace, Principal of the school, who was in the front office, that Plaintiff had been "out of control in his classroom and refused to follow my directions."

36. In the front office, Plaintiff continued to cry, although he was now crying quietly.

37. Plaintiff was also struggling with his hands behind his back.

38. Defendant Wallace did not intervene or instruct Defendant Craddock to remove the handcuffs.

39. Defendant Wallace ignored Plaintiff while she completed paperwork for something unrelated to Plaintiff.

40. Defendant Craddock told Plaintiff to sit in a chair, and Plaintiff complied while still crying. Defendant Craddock continued to order Plaintiff to "calm down."

41. Approximately ten or fifteen minutes after Defendant Craddock led Plaintiff to the front office in handcuffs, Plaintiff's father—who had been contacted by the classroom teacher after the teasing incident—arrived and saw Plaintiff sitting in handcuffs in the front office.

42. When Plaintiff's father arrived, Defendant Craddock was speaking to someone else, Plaintiff was sitting quietly with his hands cuffed behind his back, and someone had placed a jacket over Plaintiff's shoulders, covering his arms and the handcuffs.

43. Plaintiff's father was shocked by the situation and asked Defendant Craddock how serious the situation was.

44. According to Defendant Craddock's report, he told Plaintiff's father that "handcuffs are the last resort if we can not [*sic*] verbally get the student to cooperate."

45. After this conversation, Defendant Craddock finally removed the handcuffs and released Plaintiff to his father's care.

46. Plaintiff did not pose a flight risk.

47. Plaintiff was not, and had never been, armed.

48. Plaintiff was nonviolent.

49. Plaintiff had not threatened anyone.

50. Plaintiff had not been in any physical altercation with any student, or anyone else, before Defendant Craddock handcuffed him.

51. At the time he was handcuffed, Plaintiff weighed less than fifty pounds and was less than four feet tall.

52. Plaintiff never posed a danger at any time to Defendant Craddock, himself, or anyone else that could be alleviated by handcuffing him.

53. In fact, handcuffing Plaintiff with his hands behind his back increased the likelihood that Plaintiff could be injured.

54. KCPS took no further disciplinary action against Plaintiff as a result of the incident on April 30, 2014.

55. Being yelled at, handcuffed, and forcibly pushed and pulled down the hallway in front of classmates, teachers, and administrators caused Plaintiff emotional and psychological harm.

56. Because Plaintiff no longer felt safe at school as a result of Defendants' conduct, Plaintiff's mother withdrew him from Melcher Elementary, causing Plaintiff to miss the last two weeks of his second-grade year.

7

Case 4:16-cv-00974-SRB   Document 1   Filed 09/08/16   Page 7 of 12

57. At great personal hardship, Plaintiff's mother homeschooled Plaintiff for the next two academic years before enrolling him in a different school.

58. KCPS spokeswoman Eileen Houston-Stewart stated publicly that Defendant Craddock had followed KCPS protocol.

59. KCPS spokeswoman Houston-Stewart stated that "[t]here are a number of methods our staff can use, and one of those is using handcuffs, and that's what occurred in this incident."

## COUNT I: UNREASONABLE SEIZURE AND EXCESSIVE FORCE

*Against All Defendants for*
*Unlawful Seizure and Excessive Force*
*in Violation of the U.S. Constitution, Fourth and Fourteenth Amendments*
*42 U.S.C. § 1983*

60. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint.

61. The federal Constitution protects Plaintiff against unreasonable seizure and excessive force. "The reasonableness of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Whether a seizure is unreasonable and unconstitutional depends on the totality of the circumstances. *Id.* at 396.

62. Under the totality of the circumstances, including Plaintiff's size, age, and conduct, Defendants' seizure of Plaintiff, who posed no imminent threat to the safety of anyone and had committed no crime, was objectively unreasonable.

63. Defendant Craddock, acting under the color of law, unconstitutionally and unreasonably seized Plaintiff by grabbing him by the wrist and by handcuffing him because he was frightened and crying.

64. Defendant Wallace, acting under the color of law, sanctioned and approved Plaintiff's unlawful seizure by failing to instruct Defendant Craddock to remove Plaintiff's handcuffs even though, at the time he arrived in the front office, Plaintiff posed no imminent threat to anyone and was complying with instructions.

65. Defendants Craddock handcuffed and Defendants Craddock and Wallace prolonged the handcuffing of Plaintiff as punishment for crying and hollering.

66. Defendants Craddock and Wallace, acting under color of law and with deliberate indifference, violated Plaintiff's right under the federal Constitution to be free from unreasonable seizures and excessive force.

67. Plaintiff's right to be free from unreasonable seizures and excessive force as described herein was clearly established at the time of the incident alleged.

68. No reasonable person would have believed the use of handcuffs on a seven-year-old weighing less than fifty pounds who posed no danger to anyone and who committed no crime was a lawful seizure or an appropriate amount of force.

69. Defendant Craddock acted maliciously, intentionally, and in reckless disregard to Plaintiff's rights and not in a good faith effort to promote safety or any other legitimate ends.

70. Defendant KCPS has maintained, with deliberate indifference, an unconstitutional custom and policy of handcuffing students who pose no imminent danger.

71. As a result of Defendants' actions, Plaintiff suffered pain, fear, and emotional and psychological harm and withdrew from school.

WHEREFORE, Plaintiff prays this Court:

A. Enter judgment in favor of Plaintiff and against Defendants KCPS, Craddock, and Wallace;

9

B. Award Plaintiff compensatory damages against Defendants KCPS and Wallace and compensatory and punitive damages against Defendant Craddock for violation of Plaintiff's constitutional rights under color of state law;

C. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

D. Allow such other and further relief as the Court deems just and proper.

## COUNT II: MUNICIPAL LIABILITY

*42 U.S.C. § 1983—Municipal Liability and Failure to Train and Supervise
Against Defendant Kansas City Public Schools*

72. Plaintiff incorporates herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

73. Defendant KCPS developed and maintained policies and customs exhibiting deliberate indifference to Plaintiff's constitutional rights.

74. Defendant KCPS failed to train and supervise Defendant Craddock on reasonable and lawful behavior interventions, thereby demonstrating a deliberate indifference to Plaintiff when it allowed Defendant Craddock to handcuff him and to prolong his handcuffing.

75. Upon information and belief, Defendant Wallace was the policymaker for George Melcher Elementary School and was responsible for supervising School Resource Officers like Defendant Craddock.

76. Defendant Wallace knew personally that Plaintiff was handcuffed although he posed no imminent danger to anyone and, even taking Defendant Craddock's report at face value, it was clear that Plaintiff had committed no crime.

77. Defendant Wallace did not take any corrective action to address the excessive force Plaintiff endured or his unconstitutional and unreasonable seizure.

78. At the time of the above-described incident, it was the custom or policy of Defendant KCPS to inadequately supervise and train its School Resource Officers, thereby evidencing a deliberate indifference to Plaintiff's constitutional rights.

79. Defendant KCPS was deliberately indifferent to Plaintiff's constitutional rights by failing to have a policy in place to protect schoolchildren's right to bodily integrity and to be free to unreasonable seizures and excessive force or, alternatively, by failing to implement or follow that policy or to train School Resource Officers on that policy.

80. As a direct and proximate result of Defendant KCPS's customs and policies, Plaintiff sustained damages.

WHEREFORE, Plaintiff prays this Court:

A. Enter judgment in favor of Plaintiff and against Defendant KCPS;

B. Issue an injunction requiring Defendant KCPS to develop and implement adequate training programs for its School Resource Officers about schoolchildren's rights under the Fourth Amendment;

C. Award Plaintiff compensatory damages against Defendant KCPS for violation of Plaintiff's constitutional rights under color of state law;

D. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

E. Allow such other and further relief as the Court deems just and proper.

Respectfully submitted,


/s/ Anthony E. Rothert
ANTHONY E. ROTHERT, #44827MO
JESSIE STEFFAN, #64861MO
ACLU of Missouri Foundation
454 Whittier Street
St. Louis, Missouri 63108
Phone: (314) 652-3114
Fax: (314) 652-3112
trothert@aclu-mo.org
jsteffan@aclu-mo.org

GILLIAN R. WILCOX, #61278MO
ACLU of Missouri Foundation
406 W 34th Street
Suite 420
Kansas City, Missouri 64111
Phone: (816) 470-9938
gwilcox@aclu-mo.org

ATTORNEYS FOR PLAINTIFF

12