IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION

| | |
|---|---|
| K.W.P.<br>By His Parent and Next Friend,<br><br>      Plaintiff,<br><br>v.<br><br>KANSAS CITY PUBLIC SCHOOLS, et al.,<br><br>      Defendants. | Case No. 16-0974-CV-W-SRB |

## ORDER

Before the Court is Defendants Kansas City Public Schools', Brandon Craddock's, and Anne Wallace's Motion for Summary Judgment. (Doc. #69). For the following reasons, the motion is DENIED.

### I.   Background

Plaintiff K.W.P., an elementary schoolchild, sued Kansas City Public Schools ("KCPS"), Officer Brandon Craddock, and Principal Anne Wallace for violations of the U.S. Constitution and the Fourth and Fourteen Amendments under 42 U.S.C. § 1983. Plaintiff alleges two separate Fourth Amendment events—the decision to handcuff Plaintiff in the hallway, and the decision to keep Plaintiff handcuffed in the front office. Plaintiff also sues KCPS for municipal liability and failure to train and supervise under § 1983. Officer Craddock handcuffed Plaintiff in the hallway outside his classroom. Officer Craddock is employed by KCPS as a patrol officer. (Doc. #86, ¶ 26). Anne Wallace is the principal of the school where the incident occurred. (Doc. #86, ¶ 5). The facts giving rise to the incident are disputed.

At the time of the incident, Plaintiff attended George Melcher Elementary School within the KCPS system. (Doc. #86, ¶ 1). It is undisputed that on April 30, 2014, there was "some

commotion" in Ms. Beverly Cole's classroom. (Doc. #86, ¶ 11). Officer Craddock, who was in the school at the time, was asked by a staff member to step inside Ms. Cole's classroom to assist with an "out of control" student. (Doc. #86, ¶ 27). Exactly what happened in the classroom is disputed but irrelevant to the Court's present decision. None of the Defendants observed or otherwise knew of the events in the classroom, other than Office Craddock being informed that there was an "out of control student" in Ms. Cole's classroom. Officer Craddock had never before encountered Plaintiff. (Doc. #86, p. 43).[1] Plaintiff's behavior upon Officer Craddock's arrival is disputed. Defendants argue that Plaintiff was standing, screaming at the top of his lungs, and desiring to hit another student. (Doc. #86, ¶ 28). Plaintiff argues that he was sitting quietly by the time Officer Craddock arrived, and he did not touch other students. (Doc. #86, ¶ 28). Officer Craddock asked Plaintiff to accompany him into the hallway. (Doc. #86, ¶ 23). It is undisputed that Plaintiff did not want to go with him. (Doc. #86, ¶ 36). It is disputed whether Plaintiff was screaming at this point. (Doc. #86, ¶ 37).

    Once in the hallway, Officer Craddock told Plaintiff that he was not in trouble. Officer Craddock bent down to Plaintiff's level and said, "Son, I need you to calm down." (Doc. #86, ¶ 38). Plaintiff did not calm down. (Doc. #86, ¶ 39). Defendants argue that Plaintiff became angrier and attempted to get away. (Doc. #86, ¶ 41). Plaintiff argues that he was not angry, rather crying loudly, and was attempting to get out of Officer Craddock's grasp, not flee, as Defendants argue.[2] (Doc. #86, ¶ 41). Officer Craddock told Plaintiff several times to stop trying to get away. (Doc. #86, ¶ 42). Officer Craddock put his hand on Plaintiff's back to guide him in the direction that Officer Craddock was walking. (Doc. #86, ¶ 43). Defendants argue that,

---

[1] When responding to Defendants' motion for summary judgment, Plaintiff put forth their own facts but did not continue the paragraph numbers from Defendants' motion for summary judgment. Instead, Plaintiff restarted the paragraph count. Therefore, citations referencing a page number in Doc. #86 refer to Plaintiff's additional facts whereas a paragraph number refers to Defendants' statement of facts.

[2] This is the first mention of physical contact between Plaintiff and Officer Craddock in the pleadings.

because Plaintiff resisted, Officer Craddock grabbed Plaintiff's left wrist, causing Plaintiff to scream and jerk away from Officer Craddock. (Doc. #86, ¶ 44). Plaintiff argues that Officer Craddock's grab of Plaintiff's wrist escalated Plaintiff's attempts to free himself from Craddock's grasp. (Doc. #86, ¶ 44). It is undisputed that, when Officer Craddock grabbed Plaintiff's left wrist, Plaintiff tried "even more" to get away. (Doc. #86, ¶ 45). When Officer Craddock reached out his arm to block Plaintiff from getting away, Plaintiff tried to push past him. (Doc. #86, ¶ 46). Plaintiff continued to aggressively pull away from Officer Craddock's grasp. (Doc. #86, ¶ 47). Defendants argue that Plaintiff was screaming, but Plaintiff argues he was crying. (Doc. #86, ¶ 48). Officer Craddock told Plaintiff, "Son, if you don't calm down, I'm going to have to put the cuffs on." (Doc. #86, ¶ 49). It is disputed how many times Officer Craddock requested Plaintiff calm down. (Doc. #86, ¶ 50). When Plaintiff spotted a handrail on the side of the hallway, he grabbed it. (Doc. #86, ¶ 51). What he did after grabbing the handrail is disputed. Defendants argue Plaintiff began swinging and flailing his arms violently. (Doc. #86, ¶ 52). Plaintiff denies these actions. (Doc. #86, ¶ 52).

    At this time, Officer Craddock believed that Plaintiff posed a safety threat, flight risk, and substantial risk of serious physical injury. (Doc. #86, ¶ 53). Plaintiff disputes these threats and risks. (Doc. #86, ¶ 53). Defendants argue that Officer Craddock feared for the safety of himself and Plaintiff. (Doc. #86, ¶ 54). Plaintiff disputes this allegation. (Doc. #86, ¶ 54). At oral argument, the parties disputed whether there were other people in the hallway. Officer Craddock believed Plaintiff was committing a crime by resisting arrest and trying to get away. Plaintiff disputes this assertion because of Officer Craddock's statements to Plaintiff that he was not in trouble. (Doc. #86, ¶ 55). It is undisputed that Officer Craddock handcuffed Plaintiff. (Doc. #86, ¶ 56). The exact location (with respect to proximity to the front office) of the handcuffing is

3

disputed. (Doc. #86, ¶ 56). The amount of time that elapsed between Officer Craddock's arrival to the classroom and the handcuffing of Plaintiff is not established in the record. Officer Craddock double-locked the handcuffs so they would not tighten on Plaintiff's wrists. (Doc. #86, ¶ 57).

Defendants argue that Plaintiff was kicking, screaming, and crying as Plaintiff was escorted to the front office. Contrarily, Plaintiff argues he "got tired and stopped trying to resist what was happening to him." (Doc. #86, ¶ 58). Defendants argue that after being handcuffed, Plaintiff was still upset and continued to try to get away. Plaintiff argues he was upset but not trying to go anywhere. (Doc. #86, ¶ 61). Principal Wallace testified that Plaintiff was screaming and out of control when Plaintiff arrived in the front office. (Doc. #86, ¶ 62). Plaintiff argues that once in the front office, he sat in a chair pursuant to Officer Craddock's commands and did not attempt to leave. (Doc. #86, ¶ 61). Defendants argue that Officer Craddock told Principal Wallace and Plaintiff that he would remove the handcuffs as soon as Plaintiff calmed down. (Doc. #86, ¶ 63). Plaintiff argues that Officer Craddock did not request that Plaintiff calm down after he was handcuffed. (Doc. #86, ¶ 63). Plaintiff also contends that he was calm by this point. (Doc. #86, ¶ 63).

Principal Wallace testified that she believed it was appropriate to keep the handcuffs on Plaintiff because of his past aggression and prior attempts to flee the school after being disciplined by a school authority. (Doc. #86, ¶ 64). Plaintiff contests this belief because Principal Wallace left the front office to complete unrelated paperwork while Plaintiff remained there. (Doc. #86, ¶ 64). Defendants argue that Officer Craddock was the sole decision-maker in the incident, but Plaintiff argues Principal Wallace and KCPS played a role as well. (Doc. #86, ¶ 64). Officer Craddock removed the handcuffs when Plaintiff's father arrived. (Doc. #86, ¶ 65).

4

The total time Plaintiff was in handcuffs is disputed. (Doc. #86, ¶¶ 67-70). Defendants and other witnesses to the incident believe he was handcuffed for five minutes, while Plaintiff testified he was handcuffed for twenty minutes. (Doc. #86, ¶¶ 67-70). Defendants argue that the handcuffs did not hurt Plaintiff. (Doc. #86, ¶ 71). However, Plaintiff argues that his wrists were tender and red after the cuffing, and he suffered mental and emotional distress. (Doc. #86, ¶ 71). Defendants argue that Plaintiff violated multiple school policies and committed Class II Offenses by exhibiting disruptive behavior, defying authority, and creating a dangerous situation. Plaintiff contests these alleged violations. (Doc. #86, ¶ 73).

It is undisputed that KCPS provided Officer Craddock with handcuffs. (Doc. #102, p. 27). Plaintiff argues that KCPS' security department permits officers to use handcuffs on students regardless of age. (Doc. #86, p. 45). Defendants argue that this assertion lacks a foundation and misinterprets Officer Craddock's testimony. Plaintiff argues that the training by KCPS regarding handcuff use is uniform for children and adults. (Doc. #86, p. 45). Defendants point to Officer Craddock's testimony undermining this claim. At oral argument it was undisputed that KCPS provides no training regarding the use of handcuffs specifically on minors.

## II.     Legal Standard

Motions for summary judgment essentially "define disputed facts and issues and … dispose of unmeritorious claims." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 584 (2007). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* A fact is material when it "might affect the outcome of the suit under the governing law." *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (internal citations and quotations

5

omitted). Thus, "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine if it has a real basis in the record, or when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992); *Anderson*, 477 U.S. at 248. Thus, a genuine issue of material fact is not the "mere existence of some argued factual dispute between the parties." *State Auto. Ins. Co. v. Lawrence*, 358 F.3d 982, 985 (8th Cir. 2004).

A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefits of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Because we view the facts in the light most favorable to the non-moving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather than "attempt[ing] to determine the truth of the matter … the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

### III. Discussion

#### a. Qualified Immunity

42 U.S.C. § 1983 provides a remedy for violations of constitutionally protected rights but "does not provide a remedy for every argued wrong committed under color of law." *Brookins v. State of Mo. Bd. Of Prob. & Parole*, 586 F.Supp. 29, 30 (W.D. Mo. 1984). Under the doctrine of qualified immunity, government employees may be shielded from § 1983 suits. Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Kammueller*, 383 F.3d at 784.

6

"Qualified immunity 'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Accordingly, courts must determine "(1) whether or not the state actor deprived the complainant of a constitutional or statutory right, and (2) if there was a deprivation of such a right, whether or not the right was clearly established such that a reasonable person would have realized that his or her actions were unlawful." *Maness v. Dist. Court of Logan Cty.–N. Div.*, 495 F.3d 943, 945 (8th Cir. 2007); *Nelson v. Shuffman*, 603 F.3d 439, 446 (8th Cir. 2010).

### i. Officer Craddock

Officer Craddock argues he is entitled to qualified immunity, and thus, the claims against him should be dismissed at the summary judgment stage. This Court will consider whether Officer Craddock is protected by qualified immunity on the two separate Fourth Amendment events in turn. To support his position that he is entitled to qualified immunity regarding the handcuffing of Plaintiff, Officer Craddock argues that he did not violate Plaintiff's constitutional rights because: (1) a student's Fourth Amendment rights are less protected in a school setting than other environments; and (2) Officer Craddock lawfully detained Plaintiff on account of Plaintiff's crimes of assault, resisting arrest, and violation of multiple school policies. Further, Officer Craddock argues that the right was not "clearly established" because existing precedent does not clearly indicate that his actions violated the Fourth Amendment. In response, Plaintiff points to case law where an officer's actions were found to be unreasonable, arguing a "clearly established" violation. There are extensive factual disputes in this case, as detailed in § I. After a careful look at the record, this Court finds the following facts are genuinely disputed—whether

7

Plaintiff was screaming upon Officer Craddock's arrival to the classroom (Doc. #70-6, 121:7-8; Doc. #70-2, 127:8-10); whether Plaintiff attempted to flee from Officer Craddock's grasp (Doc. #70-6, 92:17-20; Doc. #70-2, 139:20-25); whether Plaintiff continued to scream in the hallway with Officer Craddock (Doc. #70-4, 78:16-79:4; Doc. #70-5, 61:21-23); whether Plaintiff posed a safety threat once in the hallway (Doc. #70-6, 92:5-20; Doc. #70-2, 142:16-23); the time elapsed from Office Craddock's arrival to the handcuffing; and whether anyone else was in the hallway and at risk due to Plaintiff's behavior.

Given these disputed facts, this Court is unable to determine whether Officer Craddock deprived Plaintiff of his constitutional rights when he handcuffed Plaintiff in the hallway, as explained below in § b(i). This Court is unable to point to sufficient undisputed facts to support a finding of qualified immunity at this stage.[3] For the same reason, the Court is unable to determine whether the right was so clearly established that a reasonable officer would have realized that his actions were unlawful. Since qualified immunity requires an answer to both questions and this Court cannot answer whether there is a constitutional violation, this Court need not decide at this time whether the right was clearly established. Accordingly, this Court denies summary judgment on the claim of handcuffing Plaintiff in the hallway against Officer Craddock on the grounds of qualified immunity.

---

[3] This Court notes that it can submit a special interrogatory, or interrogatories, at trial. This Court requests briefing on whether it should submit special interrogatories to the jury and, if so, regarding which factual disputes. This briefing should consider all Defendants' claims for qualified immunity.
    The Eighth Circuit Court of Appeals has explained:
> The issue of qualified immunity … is frequently intertwined with unresolved factual questions. Where, as in this case, factual questions prevent a district court from ruling on the issue of qualified immunity, it is appropriate to tailor special interrogatories specific to the facts of the case. This practice allows the jury to make any requisite factual findings that the district court may then rely upon to make its own qualified immunity ruling.

*Littrell v. Franklin*, 388 F.3d 578, 585 (8th Cir. 2004). In this case, special interrogatories would allow the jury to determine the disputed factual issues. "With the jury's findings concerning any special interrogatories, and the trial record, [this Court] will be better positioned to decide the question of qualified immunity as a matter of law." *Shannon v. Koehler*, F.Supp.2d 673, 784 (8th Cir. 2009) (citing *Littrell*, 388 F.3d at 584-85 ("The law of our circuit is clear. The issue of qualified immunity is a question of law for the court, rather than the jury, to decide.")).

Plaintiff alleges that a second Fourth Amendment violation occurred when Officer Craddock kept the handcuffs on Plaintiff once in the front office. As with the initial handcuffing of Plaintiff, this Court is unable to decide whether Office Craddock is immune from suit for the decision to keep Plaintiff in handcuffs in the front office because too many facts are in dispute. At oral argument, Plaintiff alleges that no facts are disputed about what happened in the front office. This Court disagrees. After a careful look at the record, this Court finds the following facts are genuinely disputed—whether Plaintiff was screaming in the front office (Doc. #70-3, 88:5-7; Doc. #70-2, 145:21-146:18); whether Plaintiff posed a safety threat once in the front office (Doc. #70-2, 145:8-20; Doc. #70-3, 113:14-25); and how long Plaintiff was handcuffed (Doc. #70-6, 106:25-107:2; 154:17-24). For the same reasons articulated in the previous paragraph, this Court is unable to point to sufficient undisputed facts to support a finding of qualified immunity at this stage.

### ii. Principal Wallace

Principal Wallace also argues that she is entitled to qualified immunity on both alleged Fourth Amendment events because she did not violate Plaintiff's constitutional rights and, if she did, the right was not clearly established. As explained above, because of the factual disputes surrounding both alleged Fourth Amendment events, this Court is unable to determine at this stage whether Principal Wallace is entitled to qualified immunity.

Principal Wallace also argues that she is entitled to qualified immunity because she was not involved in either event. Plaintiff counters that this argument ignores Officer Craddock's account of the incident, which indicates Principal Wallace participated in the incident and decided, with Officer Craddock, to keep Plaintiff in handcuffs in the front office. "A supervising officer can be liable for an inferior officer's constitutional violation only if he directly

9

participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). Because it is unclear whether a deprivation occurred, this Court is unable to point to sufficient undisputed facts to support a finding of qualified immunity at this stage.

### b. Substantive Claims

Unable to decide whether Officer Craddock or Principal Wallace are entitled to qualified immunity at this time, this Court moves to consider whether the claims brought against Defendants can prevail substantively at the summary judgment stage.

#### i. Count I: Unreasonable Seizure and Excessive Force

Plaintiff claims that Officer Craddock violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure by using excessive force: (1) during the initial handcuffing of Plaintiff; and (2) keeping Plaintiff handcuffed in the front office.[4] "Such a claim requires the Court to analyze whether the officer['s] actions were objectively reasonable in light of the facts and circumstances confronting them." *Womack v. Bradshaw*, 49 F.Supp.3d 624, 632 (W.D. Mo. 2014), *aff'd*, 610 F. App'x 582 (8th Cir. 2015) (internal citations and quotations omitted).[5] Ascertaining the reasonableness of the force used requires the Court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the

---

[4] It is unclear if Plaintiff intends the claims of unreasonable seizure and excessive force to be separate. Because Count I is entitled "Unreasonable Seizure and Excessive Force," this Court considers the claims together. This is not determinative in this Court's decision.

[5] The parties dispute what Fourth Amendment protection students have in schools. Defendants argue that, while students have some Fourth Amendment rights at school, those rights are different because schools have a duty to maintain a learning environment. Thus, Defendants argue, the reasonableness inquiry must consider a school's "custodial and tutelary responsibility for children" and the fact that students have a "lesser expectation" of freedom than the greater population. (Doc. #70, p. 17). Plaintiff argues that, even if the lower standard applies, the seizure must "be reasonable in light of the circumstances and not excessively intrusive in light of the age of the student." (Doc. #86, p. 56).

Because so many facts material to the reasonableness inquiry, whether in a general or school context, are disputed, this Court declines to decide at this stage whether a lower Fourth Amendment standard applies to seizures in schools because the resolution of this summary judgment motion is the same regardless of the applicable Fourth Amendment standard.

10

countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). In conducting this inquiry the Court must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether [the suspect] [was] actively resisting arrest or attempting to evade arrest by flight." *Id.* In this case numerous facts material to reasonableness, as laid out by the Supreme Court in *Graham*, are disputed. *See supra* § III(a)(i). Not only are the disputed facts material, but the dispute is genuine as well. Because there are numerous genuine issues of material fact, summary judgment on the claim of unreasonable seizure and excessive force is inappropriate. Accordingly, Defendants' request for summary judgment on Count I for unreasonable seizure and excessive force is denied.

### ii. Count II: Municipal Liability and Failure to Train and Supervise

Plaintiff argues that KCPS developed and maintained policies exhibiting deliberate indifference to Plaintiff's constitutional rights and failed to train and supervise Officer Craddock on reasonable and lawful behavior interventions. A municipality is only liable under § 1983 if the plaintiff demonstrates that a municipality's "policy or custom caused a plaintiff to be deprived of a federal right." *Alexander v. Hedback*, 718 F.3d 762, 766 (8th Cir. 2013). A policy may either arise from a municipality's official promulgation, or through a single act by a decision-maker "who possesses final authority to establish municipal policy with respect to the action ordered." *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 659 (8th Cir. 2007). To demonstrate a custom, a plaintiff must show:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

11

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct, and
(3) The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e. that the custom was the moving force behind the constitutional violation.

*Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). This Court notes that it was undisputed at oral argument that KCPS provided Officer Craddock with handcuffs but failed to provide training specific to handcuffing minors. However, to prevail on a failure to train claim, Plaintiff must show a deprivation of a federal right caused by a policy or custom. Because so many material facts are disputed, as explained above, this Court denies summary judgment for KCPS on the grounds of municipal liability.

## IV. Conclusion

For the foregoing reasons, Defendants Kansas City Public Schools', Brandon Craddock's, and Anne Wallace's Motion for Summary Judgment (Doc. #69) is DENIED, and the Court orders additional briefing regarding special interrogatories (n.2) be filed at least ten (10) business days prior to the final pretrial conference.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: October 31, 2017