IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION

| | |
|---|---|
| K.W.P. <br> By His Parent and Next Friend, <br><br> Plaintiff, <br><br> v. <br><br> KANSAS CITY PUBLIC SCHOOLS, et al., <br><br> Defendants. | Case No. 16-0974-CV-W-SRB |

## ORDER

Before the Court are four motions to limit or exclude expert testimony. Three were filed by Defendants—Defendants' Motion to Exclude or Limit the Opinions of Plaintiff's Retained Expert Robert R. Rail (Doc. #71), Defendants' Motion to Exclude or Limit the Opinions of Plaintiff's Retained Expert Bill Geis (Doc. #73), and Defendants' Motion to Exclude or Limit the Opinions of Plaintiff's Retained Experts James B. Golden and Lisa H. Thurau (Doc. #75). One was filed by Plaintiff—Plaintiff's Motion to Exclude or Limit the Opinions of Expert Michael Huth (Doc. #93). For the following reasons, Defendants' Motion to Exclude or Limit the Opinions of Plaintiff's Retained Expert Robert R. Rail (Doc. #71), Defendants' Motion to Exclude or Limit the Opinions of Plaintiff's Retained Expert Bill Geis (Doc. #73), and Plaintiff's Motion to Exclude or Limit the Opinions of Expert Michael Huth (Doc. #93) are DENIED. Defendants' Motion to Exclude or Limit the Opinions of Plaintiff's Retained Experts James B. Golden and Lisa H. Thurau (Doc. #75) is DENIED in part and GRANTED in part.

I.    **Background**

This case arises out of the handcuffing of a seven-year old boy by a Student Resources Officer (SRO) in George Melcher Elementary School, a Kansas City Public School (KCPS). On

April 30, 2014, there was "some commotion" in Ms. Beverly Cole's second-grade classroom. (Doc. #86, ¶ 11). The students complained that Plaintiff, a seven-year old boy in Ms. Cole's class, "did something." (Doc. #86, ¶ 12). In response, Ms. Cole moved Plaintiff's desk near Ms. Cole's. (Doc. #86, ¶ 13). Another student began making faces at Plaintiff. (Doc. #86, ¶ 14). After a while, Plaintiff "couldn't hold it in" and got out of his seat and started yelling at the other student. (Doc. #86, ¶ 14). Plaintiff was angry, upset, and loud. (Doc. #86, ¶¶ 15, 18, 23). Ms. Cole instructed Plaintiff to calm down, but Plaintiff refused and remained standing for a "long time." (Doc. #86, ¶ 16). Another woman came into the classroom and attempted to discipline Plaintiff by demanding he sit down, but he refused, growing more angry. (Doc. #86, ¶ 24). It is disputed whether Plaintiff hit any students or caused property damage by overturning his desk. (Doc. #86, ¶¶ 15, 17, 22, 25).

Officer Brandon Craddock, a patrol officer, responded to the situation. (Doc. #86, ¶¶ 27-28). It is disputed whether Plaintiff was yelling or standing at this time. (Doc. #86, ¶ 28). Officer Craddock requested that Plaintiff follow him out of the classroom. (Doc. #86, ¶ 33). Although Plaintiff did not want to go with Officer Craddock, he eventually did follow Officer Craddock into the hallway. (Doc. #86, ¶¶ 36-37). Officer Craddock told Plaintiff that he was not in trouble and requested that he calm down. (Doc. #86, ¶¶ 38, 40). It is disputed whether Plaintiff attempted to get away from Officer Craddock. (Doc. #86, ¶¶ 41-42). Officer Craddock attempted to put his hand on Plaintiff's back to guide him, but Plaintiff resisted. (Doc. #86, ¶¶ 43-44). Officer Craddock grabbed Plaintiff's left wrist, which provoked Plaintiff even more to attempt to flee. (Doc. #86, ¶¶ 44-45). Officer Craddock told Plaintiff, "Son, if you don't calm down, I'm going to have to put the cuffs on." (Doc. #86, ¶ 49). Plaintiff grabbed a handrail on the side of the hallway. (Doc. #86, ¶ 51).

2

Officer Craddock believed Plaintiff was committing a crime by resisting detention and attempting to flee. (Doc. #86, ¶ 55). Officer Craddock handcuffed Plaintiff and "double locked" the handcuffs so they would not tighten and hurt Plaintiff. (Doc. #86, ¶ 56). It is disputed whether Plaintiff attempted to resist and whether he screamed once handcuffed. (Doc. #86, ¶¶ 58-63). Officer Craddock brought Plaintiff to the front office. (Doc. #86, ¶ 58). Principal Anne Wallace saw Plaintiff in handcuffs. (Doc. #86, ¶ 62). It is disputed how long Plaintiff remained handcuffed. (Doc. #86, ¶¶ 67-70). Officer Craddock released Plaintiff from the handcuffs when Plaintiff's father arrived to the front office. (Doc. #86, ¶ 65). Plaintiff argues that the incident caused him emotional and psychological harm. (Doc. #1, ¶ 55).

Defendants challenge the testimony of three experts—Mr. Robert R. Rail, a handcuffing expert; Dr. Bill Geis, a forensic psychologist; and Mr. James B. Golden and Ms. Lisa H. Thurau, law enforcement training experts. Plaintiff challenges the testimony of Mr. Michael Huth, a handcuffing expert.

## II.     Legal Standard

The admission of expert testimony is governed by Federal Rule Evidence (FRE) 702. *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006). FRE 702 permits expert testimony "if (a) the expert's … specialized knowledge will help the trier of fact understand the evidence …; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the witness has applied the principles and methods reliably to the facts of the case." In *Daubert* the Supreme Court redefined the standard for the admission of expert testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). In fulfilling its "gatekeeping" role, a trial court faced with a proffer of expert testimony must determine at the outset whether the evidence "both rests on a reliable foundation and is relevant

3

to the task at hand." *Id.* at 597.  The Court in *Daubert* emphasized that the inquiry required by FRE 702 is intended to be flexible.  *Id.* at 594.  The *Daubert* analysis was extended to all expert testimony, as opposed to only "scientific" testimony.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 135, 147 (1999).

Due to the liberalization of expert testimony admission standards signaled by *Daubert* and its progeny, and the codification of this trend by FRE 702, the Eighth Circuit has held that expert testimony should be liberally admitted.  *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) (citing *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011) (doubts about usefulness of expert testimony are resolved in favor of admissibility)); *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (expert testimony should be admitted if it advances the trier of fact's understanding "to any degree"); *Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (FRE 702 "clearly is one of admissibility rather than exclusion") (quotations omitted).  As long as the expert testimony rests upon "good grounds, based on what is known," it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded at the outset.  *Id.* (citing *Daubert*, 509 U.S. at 596). Exclusion of an expert opinion is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury."  *Wood v. Minnesota Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (citation and quotation marks omitted).

### III. Discussion

#### a. Defendants' Motion to Exclude or Limit the Opinions of Plaintiff's Retained Expert Robert R. Rail (Doc. #71)

Mr. Rail, a handcuffing expert, intends to testify that:

the handcuffing of [Plaintiff] was unnecessary, and against general law enforcement
and custodial standards.  Furthermore, [Officer] Craddock utilized handcuffs on a

4

> child, which is beyond the scope of manufacturer specifications for any handcuff's specifications that are certified … for use in law enforcement. Lastly, Law
> Enforcement Standards of Practice prohibit the painful use of handcuffs, secured behind the back, in detention or for extended restraint, or to coerce obedience.

(Doc. #72-1, p. 8). Defendants do not contest Mr. Rail's qualifications. Defendants argue: (1) expert testimony on the reasonableness of police behavior is an inadmissible legal conclusion lacking foundation; (2) Mr. Rail's opinions regarding Plaintiff's age are irrelevant and self-excluding; and (3) Mr. Rail's opinions regarding Officer Craddock's subjective intent lack foundation and are irrelevant.

### i. Mr. Rail's Testimony Regarding the Reasonableness of Police Behavior

The first opinion Mr. Rail intends to offer is that "the handcuffing of [Plaintiff] was unnecessary, and against general law enforcement and custodial standards." In support of their position, Defendants first argue that expert testimony on the reasonableness of police action is not admissible because it is a statement of legal conclusions. Defendants contend that expert testimony on police practices and the use of force is generally allowed in a § 1983 suit, but legal conclusions, such as whether the use of force was reasonable under the circumstances, should be excluded. Plaintiff contends that Mr. Rail's testimony should be admitted because he will not offer any legal conclusions, such as whether an officer's conduct was "reasonable under the totality of the circumstances" as a matter of law, but rather he will testify about the appropriateness of the handcuffing in light of his law enforcement training experience. This Court agrees with Plaintiff's position.

FRE 704(a) permits testimony embracing an ultimate issue but requires exclusion of any testimony providing a legal conclusion. The distinction is admittedly fine. Expert opinions can embrace the ultimate issue of *fact*, for example, including whether standards or practices are

5

applicable to a given situation and whether those standards or practices were met in the situation. *Peters v. Woodbury Cty., Iowa*, 979 F.Supp.2d 901, 922 (N.D. Ia. 2013) (explaining *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994)). However, an expert cannot testify that "following or failing to follow certain standards met or failed to meet the applicable *legal* standard," such as the "reasonableness" of Officer Craddock's actions. *Id*.

The rationale for this distinction is simple. Because the jury is a fact-finding body, testimony putting forth legal conclusions, which simply tells the jury which conclusion to reach, is not helpful. FRE 704 Advisory Committee's Notes. Contrarily, expert testimony that an officer's actions did or did not comply with a standard or practice "provide[s] the jury with concrete examples against which to consider the more abstract question of whether an 'objectively reasonable officer' would have employed the same force." *Peters*, 979 F.Supp.2d at 923 (citing *United States v. Perkins*, 470 F.3d 150, 159-60 (4th Cir. 2006)).

The following examples illustrate this distinction. In *Perkins*, the Fourth Circuit, in reviewing a similar challenge as here, permitted testimony that no "law enforcement" or "legitimate" reason existed for a police officer's use of force, but the Court excluded testimony that the police officer's actions were "objectively unreasonable." *Id.* As summarized by the Northern District of Iowa, *Perkins* teaches us:

> (1) an expert may provide opinions that are phrased in such a manner as to avoid the baseline legal conclusion, for example, the "reasonableness" of the force used; (2) an expert may also respond to *hypothetical* or *abstract questions* about the reasonableness of the force used in stated circumstances; (3) an expert may also offer a *personal* assessment of the use of force, such as that the expert did or did not see any reason for the force used in the incident in question; but (4) an expert may *not* opine that the conduct in question transgressed the applicable *legal* standard, such as "objective reasonableness."

*Peters*, 979 F.Supp.2d at 924 (citing *Perkins*, 470 F.3d at 156-60).

6

Alternatively, the Eighth Circuit, in *Schmidt*, excluded an expert's testimony regarding the reasonableness of evidence collection and strip search procedure as not fact-based because it was "devoid of any standards and explanations that would assist the trier of fact in contextualizing his opinions." *Peters*, 979 F.Supp.2d at 921 (citing *Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009)); *see also Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (affirming the district court's decision to exclude expert testimony that involved only his views concerning the reasonableness of the officer's conduct in light of "Fourth Amendment standards" because it was not a fact-based opinion).

"When the common and legal meanings of a term are not easily unfurled from each other, however, as is certainly the case with 'reasonable,' it is difficult for us to conclude that testimony was unhelpful to the jury unless the testimony actually framed the term in its traditional legal context." *Peters*, 979 F.Supp.2d at 924. This Court finds that Mr. Rail's report did not frame the term "reasonable" in its traditional legal context, and the Court instructs Mr. Rail not to do so during his testimony at trial. The Court finds that Mr. Rail's testimony is helpful and does not tell the jury what verdict to reach.

Defendants put forth a second argument to exclude Mr. Rail's opinions. Defendants argue Mr. Rail's testimony that the usage of handcuffing on children violates industry standards should be excluded because the testimony contradicts industry policies and standards. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1996). This Court finds that Mr. Rail's opinion is not "so fundamentally unsupported that it can offer no assistance to the jury," and, accordingly, will permit Mr. Rail's testimony that the

7

handcuffing was against industry standards. Plaintiff can address the contradictions with industry standards on cross-examination. *Id.*

### ii. Mr. Rail's Opinions Regarding Plaintiff's Age

Mr. Rail also intends to testify that Officer Craddock utilized handcuffs on a child, which is beyond the scope of the manufacturing specifications. Defendants rely on *J.H. ex rel. J.P. v. Bernalillo Cty.*, 806 F.3d 1255, 1259-60 (10th Cir. 2015), which is not binding on this Court, to support their position that Plaintiff's age is irrelevant because an "arrestee's age … do[es] not necessarily undermine an officer's concern for safety and need to control the situation." (Doc. #72, p. 6). This is a non sequitur. Whether the manufacturing specifications permit the handcuffing of a child does not weigh on an officer's concern for safety. *J.H. ex rel. J.P.* concerns the reasonableness of an officer's actions, which is addressed above in § III(a)(i). Mr. Rail is permitted to testify to the manufacturing specifications of the handcuffs.

Additionally, Defendants object to the statement, "It is also common knowledge that a young child's bones have not finished ossifying[,] and it is potentially damaging to the bones to handcuff them." (Doc. #72, pp. 6-7). Defendants assert that a statement of "common knowledge" does not provide any "scientific, technical, or specialized knowledge" to the jury. FRE 702. While this Court agrees that FRE 702 excludes expert testimony that does not provide "scientific, technical, or specialized knowledge," this statement draws a causal connection between the common knowledge that a child's bones have not yet fully ossified and the reason why "no Law Enforcement approved handcuffs [are] manufactured to accommodate a child's wrist size"—because "it is potentially damaging to the bones to handcuff them." (Doc. #72-1, p. 11). As such, this statement provides helpful information to the jury by explaining why there may be a difference in handcuffing a child and an adult.

8

### iii. Mr. Rail's Opinions Regarding Officer Craddock's Subjective Intent

Plaintiff indicates that he will not elicit testimony from Mr. Rail regarding Officer Craddock's subjective intent for handcuffing Plaintiff or prolonging the restraint. (Doc. #90, p. 1, n.1). As such, this argument is moot. Because such testimony would fail under FRE 702 and *Daubert* for lack of foundation, this Court orders Plaintiff not to introduce any such evidence.

### b. Defendants' Motion to Exclude or Limit the Opinions of Plaintiff's Retained Expert Bill Geis (Doc. #73)

Dr. Geis intends to testify that Plaintiff "experienced a mild to moderate degree of mental injury following the school-related events pertaining to his principal and the resource officer who handcuffed him." (Doc. #74-2, p. 25). Defendants first challenge Dr. Geis' testimony on account of his lack of board certification as a clinical or forensic psychologist. However, Dr. Geis has been a licensed clinical psychologist in Missouri since 1986. (Doc. #88, p. 2). He has conducted over 700 forensic evaluations as a clinical psychologist. (Doc. #88, p. 2). Additionally, Defendants' expert, Dr. John Spiridigliozzi, Ph.D., is not board certified yet admits he has done many forensic evaluations. (Doc. #88-3, pp. 83-85). This Court declines to exclude Dr. Geis' testimony because he is licensed and not board certified.[1]

Second, Defendants argue that Dr. Geis' opinions are unreliable because he violated the appropriate methodology in formulating his opinions because he did not interview Plaintiff

---

[1] *Compare Stevens v. Omega Protein, Inc.*, No. Civ.A. 00-3326, 2002 WL 31741258, at *3 (E.D. La. Dec. 3, 2002) ("The fact that Dr. Tarabein is not Board Certified is irrelevant because Board Certification is given based on the results of a test and doctors may choose whether or not to take the test. The Defendant has failed to come forward with any evidence to challenge the qualifications the Doctor does have nor have they come forward with any evidence to suggest that Dr. Tarabein has been suspended, reprimanded, or sued in any of the jurisdictions in which he is licensed."); *Steuerwald v. Colvin*, No. 1:15-cv-00273-TWP-DML, 2015 WL 7460013, at *10 (S.D. In. Nov. 23, 2015) (holding that an Administrative Law Judge's statement improperly labeling a forensic psychologist as board certified was harmless error when the forensic psychologist was not actually board certified, but licensed, because there were other reasons to give the doctor's testimony weight, including the fact that he had been licensed since 1990, had the opportunity to review the record, and was experienced in these kinds of evaluations) *with Oaks v. Westfield Ins. Co.*, No. 13-1637, 2014 WL 198161, at *2 (E.D. La. Jan. 16, 2014) (deciding to exclude a biomedical expert because "he is not board certified or qualified in any medical specialty, he has not practiced clinical medicine in over a decade, [] he has never been licensed to practice medicine in the United States," and he lost his license in the United Kingdom due to inactivity).

alone. Plaintiff asserts that Dr. Geis intentionally decided to have Plaintiff's mother present during most, but not all, of the interview to determine whether Plaintiff was being coached by her, a technique Dr. Geis has employed on other occasions. Plaintiff also notes that a shorter interview, such as the one used here, is generally used with younger children.

To support their position Defendants cite several cases that are not binding on this Court and provide only one citation binding on this Court, *Gier By & Through Gier v. Education Service Unit No. 16*, 66 F.3d 940, 943 (8th Cir. 1995). In *Gier* the Eighth Circuit agreed with the district court's exclusion of expert testimony for several reasons—(1) a method used by the expert had not been validated for use with the subject at issue there, a mentally disabled child; (2) that same method was "insufficient, on its own, to establish that a child ha[d] been abused;" (3) the interview protocol utilized by the expert did not provide sufficient guidance; and (4) in conducting an interview, the expert "departed significantly from the clinical protocol that they submitted to the court." *Id.* Additionally, the district court questioned the general validity of the method. *Id.* Such is not the case here. Dr. Geis utilized a shorter "structured interview framework" because of Plaintiff's age, and Dr. Geis took steps to corroborate the information gathered during his interview with Plaintiff. (Doc. #88, p. 4). Defendants are free to raise any perceived shortcomings with Dr. Geis' evaluation of Plaintiff on cross-examination.

Third, Defendants argue that Dr. Geis' opinions are unhelpful because he is unable to opine how much of Plaintiff's alleged mental injuries were caused by this handcuffing incident.[2] (Doc. #74, pp. 6-8). Plaintiff argues that "expert testimony demonstrating a significant connection between the conduct that occurred and the injury alleged by Plaintiff is enough." (Doc. #88, pp. 6-7) (citing *Sellers v. Bayer Healthcare Pharm., Inc.*, No. 4:14-cv-00954-SRB,

---

[2] Prior to the April 2014 incident at issue in this matter, Plaintiff was "bear hug[ged]" by Principal Anne Wallace as discipline for talking in line when instructed to not. (Doc. #74-2, p. 19).

10

2017 WL 2305006, at *3 (W.D. Mo. Feb. 9, 2017)). This Court agrees. Any issue with the amount of impact the prior, "bear hugging" incident had on Plaintiff's alleged emotional injuries can be addressed on cross-examination.

In conclusion, Dr. Geis is permitted to testify regarding all his opinions in his report. This Court denies Defendant's Motion to Exclude or Limit the Opinions of Plaintiff's Retained Expert Bill Geis.

### c. Defendants' Motion to Exclude or Limit the Opinions of Plaintiff's Retained Experts James B. Golden and Lisa H. Thurau (Doc. #75)

"[T]he gravamen of Mr. Golden and Ms. Thurau's opinions is that the handcuffing of Plaintiff reflects a failure to train by Defendant KCPS." (Doc. #76, p. 8; Doc. #89, p. 7). Based on his deposition, Mr. Golden will testify that "Officer Craddock failed to employ de-escalation techniques, [] there should've been more involvement with school staff in handling the situation, and [] there should've been more de-escalation training." (Doc. #89, p. 4). Based on her deposition, Ms. Thurau will testify that "Kansas City Public Schools didn't recruit well, [] they didn't properly train and supervise Officer Craddock, [] the principal didn't adhere to the school's policy, [] Officer Craddock didn't exhaust all alternatives … before handcuffing …." (Doc. #89, p. 4).

Defendants argue: (1) Mr. Golden and Ms. Thurau offer impermissible legal conclusions regarding the appropriateness and legality of Officer Craddock's actions; (2) their opinions regarding Plaintiff's age are irrelevant; (3) their opinion regarding the impact of Plaintiff's handcuffing on others is inadmissible speculation; and (4) their training-related opinions must be

excluded because they are unhelpful to the jury.[3] (Doc. #76). Each argument will be addressed in turn.

First, Defendants argue that Mr. Golden and Ms. Thurau offer impermissible legal conclusions regarding the appropriateness and legality of Plaintiff's handcuffing by Officer Craddock. This is the same argument Defendants made to exclude Mr. Rail. *Supra* § III(a)(i). Specifically, Defendants object to seven (7) statements in Mr. Golden and Ms. Thurau's report as impermissible legal conclusions. In response, Plaintiff asserts that Mr. Golden and Ms. Thurau will not offer any such legal conclusions at trial. Plaintiff offers three passages from Mr. Golden and Ms. Thurau's depositions to illustrate that their testimony will not include legal conclusions. Defendants do not challenge these statements. Plaintiff does not indicate that Mr. Golden and Ms. Thurau's testimony will be limited to these passages nor does Plaintiff state an intention to exclude any of the seven (7) statements Defendants challenge. To ensure all parties understand what testimony is admissible, the Court will consider whether the seven (7) statements Defendants challenge are admissible at trial.

The same distinction articulated in § III(a)(i) above applies here. FRE 704(a) permits statements embracing the ultimate issue but prohibits statements of legal conclusions. Because the linchpin of Fourth Amendment analysis is reasonableness, the legal conclusion in this case involves whether Officer Craddock and Principal Wallace were "objectively reasonable." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006).

---

[3] Defendants also argue that Mr. Golden and Ms. Thurau's opinions regarding KCPS' policies existing at the time of the incident are irrelevant. (Doc. #76, p. 6). This Court agrees with Plaintiff that testimony regarding KCPS' policies existing at the time of the incident will logically be offered to support Plaintiff's lack of training theory. As such, the opinions are relevant and admissible. Furthermore, the two cases offered by Defendants to support their position do not address the present issue because neither deals with the admissibility of expert testimony. (Doc. #76, pp. 6-7).

12

Two statements included in Mr. Golden and Ms. Thurau's report offer impermissible legal conclusions and must be excluded at trial. The statement, "the existence of an alternative approach to a child's conduct, would be considered *by an objectively reasonable officer* as a reason to desist from use of cuffing" (Doc. #76-1, p. 10) (emphasis added), must be excluded because "an expert may not opine that the conduct in question transgressed the applicable legal standard, 'objective reasonableness.'" *Peters*, 979 F.Supp.2d at 924 (citations omitted). Additionally, the statement, "[P]laintiff suffered unnecessary, avoidable trauma, unreasonable and excessive use of force, leading to unnecessary and harmful cuffing restraints" (Doc. #76-1, p. 4), must be excluded in its present form because it is not fact-based and "devoid of any standards and explanations that would assist the trier of fact in contextualizing his opinions." *Peters*, 979 F.Supp.2d at 921 (citing *Schmidt*, 557 F.3d at 570); *see also Peterson*, 60 F.3d at 475. This Court recognizes that the statement is included in the experts' summary section of their report and notes that such opinions would be admissible if the expert appropriately provided facts to support their opinions to assist the jury, in accordance with the discussion above in § III(a)(i). This Court finds that the remaining statements challenged by Defendants are rooted in fact and do not offer legal conclusions. As such, those five statements are permitted at trial.

Second, Defendants argue that Mr. Golden and Ms. Thurau's opinions "regarding the age of Plaintiff and that rely merely on the fact that Plaintiff was a child are irrelevant." (Doc. #76, p. 5). This Court does not agree. To support their position, Defendants cite one, non-binding case noting that "an arrestee's age … *does not necessarily* undermine an officer's concern for safety and need to control the situation." (Doc. #76, p. 5) (emphasis added). Plaintiff argues that age is relevant under the Supreme Court's ruling in *New Jersey v. T.L.O.*, 469 U.S. 325 (1985),

13

articulating a lower standard of Fourth Amendment protection for a student subject to a search in school compared to in general public.

This Court declines to decide whether *T.L.O.* is applicable in the instant case because it is unnecessary. Either way (i.e. if *T.L.O.* applies or if the general Fourth Amendment standard applies), Plaintiff's age is relevant. Under *T.L.O.* and its predecessors, a Fourth Amendment event in a school must "not [be] excessively intrusive in light of the age" of the student. *T.L.O.*, 469 U.S. at 341-42. Under the general Fourth Amendment standard, whether the actions were reasonable depends on the totality of the circumstances, which includes an arrestee's age. *United States v. Files*, No. 13-3068-CR-S-MDH, 2015 WL 728368, at *2 (W.D. Mo. Feb. 19, 2015) (citations omitted). While age may not *necessarily* determine the outcome, it is certainly one of the factors to consider amongst the totality.

Third, Defendants argue that Mr. Golden and Ms. Thurau's opinion that training would have prevented trauma in other children who witnessed the incident is irrelevant and baseless. Plaintiff does not intend to offer any testimony regarding the handcuffing's impact on others. Defendants' objection is thus moot.

Lastly, Defendants argue that Mr. Golden and Ms. Thurau's training-related opinions must be excluded as unhelpful to the jury because they do not help the trier of fact understand the evidence or determine a fact in issue. Defendants contend that Mr. Golden and Ms. Thurau's opinions fail to close the analytical gap between their conclusions and any facts or data in this case. Plaintiff argues that Mr. Golden and Ms. Thurau's opinions are based on their review of the underlying facts, including the deposition of several witnesses and KCPS' policies.

This Court agrees that "an expert opinion that fails to consider the relevant facts of the case is fundamentally unsupported." *Bennett v. Corizon, LLC*, No. 2:10-CV-04149-SRB, 2016

14

Case 4:16-cv-00974-SRB   Document 105   Filed 10/31/17   Page 14 of 16

WL 8231827, at *1 (W.D. Mo. Oct. 28, 2016) (citations omitted). Such is not the case here. After reviewing KCPS' policies and testimony of those trained by KCPS (e.g. Officer Craddock), Mr. Golden and Ms. Thurau's opinions "necessarily consider the relevant facts of the case." *Id*. Therefore, the Court will not exclude their testimony on these grounds.

### d. Plaintiff's Motion to Exclude or Limit the Opinions of Expert Michael Huth (Doc. #93)

Defendants intend to offer testimony from Mr. Huth, a handcuffing expert. Mr. Huth will testify that: (1) Officer Craddock's actions were consistent with police training and customs given the totality of the circumstances; (2) Plaintiff was posing a reasonable threat to himself and others; (3) the handcuffs were appropriately applied; and (4) Officer Craddock possessed a valid private officers' commission license. Plaintiff makes two arguments—(1) Mr. Huth should be precluded from offering any legal conclusions; and (2) Mr. Huth should be precluded from testifying that Officer Craddock possessed a valid private officer's commission license because it lacks a sufficient basis.

Plaintiff's first argument is the same as made with respect to Mr. Rail, Mr. Golden, and Ms. Thurau. *Supra* §§ III(a)(i), III(c). On this ground, Plaintiff challenges Mr. Huth's first three opinions. The same analysis articulated in §§ III(a)(i) and III(c) above applies here. Because the linchpin of Fourth Amendment analysis is reasonableness, the legal conclusion in this case involves whether Officer Craddock was "objectively reasonable." *See Brigham City*, 547 U.S. at 403. Mr. Huth's first three opinions do not violate FRE 704(a)'s prohibition on statements of legal conclusions because they do not direct the jury which result to reach and are rooted in fact.

Plaintiff's second argument is that Mr. Huth's opinion regarding Officer Craddock's possession of a valid private officer's commission license is not sufficiently supported. (Doc. #94, p. 3). Defendants argue Plaintiff misread Mr. Huth's testimony, which provides a proper

basis for the opinion. (Doc. #95, pp. 1-2). Defendants argue that Mr. Huth, a retired police officer with over 22 years of experience in the KCPD, understands that a private officer commission license is revoked by a revocation letter. (Doc. #95, p. 2). Defendants argue that the absence of such a letter indicates that Officer Craddock possessed a valid private officer commission license. (Doc. #95, p. 2). "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Miller v. Bayer Healthcare Pharm., Inc.*, No. 4:14-cv-00652-SRB, 2016 WL 9047163, at *3 (W.D. Mo. Dec. 20, 2016). Mr. Huth's testimony regarding the status of Officer Craddock's private officer's commission license is admitted, and Plaintiff may attempt to undermine this opinion on cross-examination.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion to Exclude or Limit the Opinions of Plaintiff's Retained Expert Robert R. Rail (Doc. #71), Defendants' Motion to Exclude or Limit the Opinions of Plaintiff's Retained Expert Bill Geis (Doc. #73), and Plaintiff's Motion to Exclude or Limit the Opinions of Expert Michael Huth (Doc. #93) are DENIED. Defendants' Motion to Exclude or Limit the Opinions of Plaintiff's Retained Experts James B. Golden and Lisa H. Thurau (Doc. #75) is DENIED in part and GRANTED in part.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: October 31, 2017